**Barry HOROWITZ, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1565.**

United States Court of Veterans Appeals.

Decided June 11, 1993.

Keith D. Snyder, Washington, DC, on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Amanda Linn Cashion, Washington, DC, were on the brief, for appellee.

Before MANKIN, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Barry Horowitz appeals a July 19, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for Meniere's syndrome, denying an increased (compensable) evaluation for epididymitis, and denying entitlement to a total disability rating for purposes of individual unemployability (IU). *Barry P. Horowitz,* BVA 91–30011 (July 19, 1991). The Court has jurisdiction of the case pursuant to 38 U.S.C.A. § 7252(a) (West 1991). For the reasons set forth below, the Court vacates the decision of the BVA and remands the case for readjudication consistent with this opinion.

## FACTUAL BACKGROUND

Appellant served in the United States Army from December 27, 1973, to May 20, 1983. R. at 1–2, 104. In January 1978, a medical board proceeding noted appellant's "recurrent chronic epididymitis" and judged appellant qualified for active duty, but restricted his activities to exclude crawling, stooping, running, jumping, or marching for more than 15 minutes, strenuous physical activity, and handling heavy materials. R. at 8. On January 15, 1980, a medical board noted appellant's "chronic persistent mild to moderate right hemiscrotal discomfort" and recommended that appellant would be more effective if he were restricted to sedentary activity. R. at 16. In March 1983, a medical board noted that appellant was experiencing pain on his right side whenever he engaged in "any type of physical activity besides bed rest and sitting activities." R. at 93. The medical board also stated that he was suffering from bilateral sensory hearing loss secondary to trauma sustained when observing tank and field artillery fire without hearing protection. *Ibid.* On April 12, 1983, an Army physical evaluation board found appellant unfit for duty and recommended that he be "[p]ermanently retired from the service." R. at 102. The Physical Evaluation Board indicated that appellant had bilateral hearing loss (rated as 20% disabling), neuralgia of the left ilio-inguinal nerve secondary to repeated acute episodes of epididymitis with chronic pain and intermittent swelling in the scrotum (rated under Diagnostic Code (DC) 7599–8730 as 10% disabling), and status post right orchiecto-

my (although the orchiectomy was actually on the left side) (rated as 10% disabling). *Ibid.*

On May 12, 1983, appellant applied to a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) for service connection for hearing loss and for epididymitis. R. at 110–11. On November 16, 1983, the RO granted service connection for bilateral hearing loss (rated as 20% disabling) and for status post left orchiectomy (rated as 10% disabling). R. at 128. However, the RO denied service connection for right epididymitis because an August 24, 1983, examination failed to reveal the presence of that condition. *Ibid.* After appellant filed a Notice of Disagreement (NOD) with the November 1983 rating decision, R. at 129, the RO granted service connection for right epididymitis (rated as 10% disabling by analogy to a DC for scars of the skin that are superficial, tender, and painful on objective demonstration, 38 C.F.R. § 4.118, DC 7804 (1992)). R. at 137. In April 1985, the BVA increased to 20% the disability rating for appellant's right epididymitis. R. at 147.

On July 5, 1985, appellant sent an "Application for Increased Compensation Based on Unemployability," seeking a total rating for IU purposes. R. at 150. On August 19, 1985, the RO denied a total disability rating for IU purposes. R. at 152. On August 25, 1986, the BVA also denied a total disability rating for IU purposes on the basis that "appellant's service-connected disabilities are not so incapacitating as to prevent him from obtaining and maintaining some form of substantially gainful employment." R. at 165. On August 29, 1986, appellant resubmitted his claim for a total rating for IU purposes. R. at 166. Following the RO's decision that no change was warranted in the prior decision, R. at 185, appellant appealed to the BVA on this issue on October 14, 1987. R. at 194. On November 30, 1988, appellant's service representative requested that appellant also be considered for service connection for Meniere's syndrome ("a disorder of the membranous labyrinth of the inner ear that is marked by recurrent attacks of dizziness, tinnitus, and deafness." WEBSTER'S MEDI-

CAL DESK DICTIONARY 422 (1986) [hereinafter WEBSTER'S] ). R. at 213. On January 27, 1989, the BVA remanded the matter for the purpose of conducting a field investigation of the effect of appellant's service-connected disabilities on his industrial adaptability. R. at 216. On August 25, 1989, the RO denied service connection for Meniere's syndrome. R. at 262. In addition, the RO reduced the rating for appellant's service-connected bilateral hearing loss to 0% disabling and reduced the rating for right epididymitis (still rated under DC 7599–7804) to 0% disabling on the basis that any pain that appellant was suffering was the result of his post left orchiectomy and not the right epididymitis, which was supposedly "cured." *Ibid.* The RO also denied a total rating for IU purposes. *Ibid.*

In April 1990, appellant's service representative wrote to the BVA, seeking a new and impartial evaluation of appellant's conditions because of appellant's continuing inability to obtain or maintain gainful employment. R. at 294. On June 19, 1990, the BVA remanded the case for further evaluation. R. at 296. On November 8, 1990, appellant testified at a personal hearing. R. at 327–28. On January 11, 1991, the hearing officer denied service connection for Meniere's syndrome. R. at 343. On February 5, 1991, the RO denied a total rating for IU purposes. R. at 372. The BVA's July 19, 1991, decision continued the denial of service connection for Meniere's syndrome, denied an increased (compensable) rating for right epididymitis, and denied a total rating for IU purposes. *Horowitz*, BVA 91–30011, at 8–9.

## ANALYSIS

This appeal presents several issues: whether the Board's denial of service connection for Meniere's syndrome was clearly erroneous; whether the Board's denial of an increased (compensable) rating for service-connected right epididymitis was clearly erroneous; and whether the Board's denial of a total rating for IU purposes was clearly erroneous.

The Court reviews the BVA's finding under the "clearly erroneous" standard of review. 38 U.S.C.A. § 7261(a)(4) (West 1991); *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert, supra.* The Board must base its decisions on "all evidence and material of record," 38 U.S.C.A. § 7104(a) (West 1991), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C.A. § 7104(d)(1) (West 1991). *See Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (en banc); *Gilbert*, 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert*, 1 Vet.App. at 57. The Court will apply this standard of review, in turn, to the Board's disposition of each of appellant's claims.

### A. *Meniere's Syndrome*

Appellant argues that his current Meniere's syndrome is service connected and that he actually manifested symptoms while he was in service. Specifically, he attributes the Meniere's syndrome to an incident involving a tank gun muzzle blast in 1974, when he was not wearing hearing protectors. R. at 328. In fact, an Army medical board found that he had bilateral hearing loss as a result of the trauma associated with the tank gun muzzle blast. R. at 93. Appellant also has submitted numerous statements from laypersons, including his wife (R. at 221–26), service colleagues (R. at 310–15), a friend (R. at 230), and a neighbor (R. at 326), that he experienced dizziness, loss of balance, hearing trouble, and displayed a tendency to stumble or fall both during service and many years after service. Of particular interest

is a diagnosis appearing on VA chronological care records that appellant had post-traumatic Meniere's syndrome and discussing appellant's account of the tank gun muzzle blast during service. R. at 212. In its July 1991 decision, however, the Board stated that the service medical records do not include any definite diagnosis of Meniere's syndrome. *Horowitz*, BVA 91–30011, at 4–5. The Board stated that the Meniere's syndrome was first diagnosed in 1988, five years after service, and that appellant's lay statements concerning symptomatology are not supported by the medical evidence. *Horowitz*, BVA 91–30011, at 5.

The Board's rejection of the lay statements does not provide adequate reasons or bases. When seeking to establish service connection, a claimant is not limited solely to medical records. Under 38 U.S.C.A. § 1154(a) (West 1991), the Secretary of Veterans Affairs (Secretary) is directed to include in the regulations concerning service connection of disabilities that

> in each case where a veteran is seeking service[ ]connection for any disability due consideration shall be given to the places, types, and circumstances of such veteran's service as shown by such veteran's service record, the official history of each organization in which such veteran served, such veteran's medical records, and *all pertinent medical and lay evidence.* (Emphasis added.)

Under 38 C.F.R. § 3.303(a) (1992),

> Each disabling condition shown by a veteran's service records, or for which he seeks a service connection[,] must be considered on the basis of the places, types of circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records *and all pertinent medical and lay evidence.* (Emphasis added.)

Service connection may be established through competent lay evidence, not medical records alone. *Smith v. Derwinski*, 2 Vet.App. 147, 148 (1992); *Cartright v. Derwinski*, 2 Vet.App. 24, 25 (1991); *but see Espiritu v. Derwinski*, 2 Vet.App. 492, 494

(1992) (lay witness is not capable of offering evidence requiring medical knowledge). VA regulations further provide for the situation where service medical records do not provide a diagnosis of a disability. Under 38 C.F.R. § 3.303(d) (1992),

> Service connection may be granted for any disease diagnosed after discharge, *when all the evidence, including that pertinent to service,* establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and Department of Veterans Affairs regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid. (Emphasis added.)

Meniere's syndrome is "marked by recurrent attacks of dizziness, tinnitus, and deafness." WEBSTER'S at 422. Appellant's lay evidence and post-discharge diagnoses, therefore, relate directly to the issue of symptoms manifested both during service, immediately after service, and after the definite diagnosis of Meniere's syndrome.

In *Connolly v. Derwinski*, 1 Vet.App. 566, 567 (1991), the Court considered an analogous situation where a veteran had experienced post-separation pain and discharge in his left ear, headaches, and hearing loss. In that case, the Board ultimately concluded that the veteran's "Meniere-like" symptoms were unrelated to his in-service ear infection. *Id.*, 1 Vet.App. at 569. The Court held, however, that the Board could not rely on merely "generally accepted principles" to support its conclusion. *Ibid.* In this case, the Board did not rely on generally accepted medical principles; the Board stated that its finding was based on the lack of support in the medical evidence. *Horowitz*, BVA 91–30011, at 5. Nevertheless, the reasoning in *Connolly* also applies to the situation at bar. The decision in *Connolly* was based on the statutory requirement that the Board provide adequate reasons or bases for medical conclusions. *Id.*, 1 Vet.App. at 569; *see* 38 U.S.C.A. § 7104(d)(1); *Murphy v. Derwinski*, 1 Vet.

App. 78, 81 (1990); *see also Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). In this case as well, the Board is obligated to provide adequate reasons or bases for its findings of fact.

■ The Board did not ignore the lay evidence; however, the Board did not provide adequate reasons or bases for its apparent rejection of the evidence, and thus, the Court is unable to discharge its statutory obligation to review this appeal. *See* 38 U.S.C.A. §§ 7104(d)(1), 7252 (West 1991); *Gilbert*, 1 Vet.App. at 57. The Board's discussion sheds no light on the reasons why it concluded that symptoms described by lay witnesses and post-discharge diagnoses do not show the presence of Meniere's syndrome while in service. A statement that the service medical records do not support a diagnosis of in-service Meniere's syndrome, in the face of so much evidence of consistent symptomatology, is insufficient to inform a claimant of the basis for a decision or to allow judicial review. *See Gilbert*, 1 Vet.App. at 57. On remand, the Board must provide adequate reasons or bases for its findings.

■ The Board also failed to seek a medical opinion as to whether appellant's current Meniere's syndrome is related to the symptoms manifested during service and since separation from service. "[If an examination report] does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes." 38 C.F.R. § 4.2 (1992). Where there is a reasonable possibility that a current condition is related to or is a residual of a condition experienced in service, the Board should seek "a medical opinion as to whether [the claimant's] current disabilities are in any way related to or a residual of those experienced in service." *Witherspoon v. Derwinski*, 2 Vet.App. 4 (1991) (per curiam order); *see Wilson v. Derwinski*, 2 Vet.App. 16, 21 (1991); *Moore v. Derwinski*, 1 Vet.App. 401, 405–06 (1991).

■ In his brief, the Secretary argues that the case should be remanded for the Board to provide an adequate discussion of

the "benefit-of-the-doubt" doctrine. Secretary's Br. at 15–16. In its July 1991 decision, the BVA merely stated: "The evidence for and against an allowance of either of the claims is not so evenly balanced as to raise a reasonable doubt." *Horowitz*, BVA 91–30011, at 8. This rote recitation is an insufficient statement that the benefit of the doubt does not apply. *See Ledford v. Derwinski*, 3 Vet.App. 87, 90 (1992); *Webster v. Derwinski*, 1 Vet.App. 155, 159–60 (1991); *Willis v. Derwinski*, 1 Vet.App. 63, 65–66 (1990); *see also Gilbert*, 1 Vet. App. at 58. On remand, the Board must discuss whether the numerous lay statements and appellant's statements regarding in-service symptoms, when coupled with the post-service diagnoses of "post-traumatic Meniere's syndrome," result in "an approximate balance of positive and negative evidence" on the issue of service connection of Meniere's syndrome, thus triggering application of the benefit of the doubt.

**B. *Rating for Right Epididymitis***

 In reducing the rating for appellant's service-connected right epididymitis from 20% to noncompensable, the Board failed to discuss the relevant provisions of VA regulations. Appellant is correct when he states that the Board mischaracterized the issue as a claim for an increase in a rating. *See Peyton v. Derwinski*, 1 Vet. App. 282, 286 (1991) ("This is a rating reduction case, not a rating increase case.") The 20% disability rating for chronic right epididymitis went into effect on May 20, 1983. R. at 148. The rating was reduced on August 25, 1989, effective November 1, 1989. R. at 262. Because the rating had been in effect for more than six years, Sections 3.344(a) and (b) (1992) apply. *See* 38 C.F.R. § 3.344(c) (1992).

> Under 38 C.F.R. § 3.344(a),
> Rating agencies will handle cases affected by change of medical findings or diagnosis, so as to produce the greatest degree of stability of disability evaluations consistent with the laws and Department of Veterans Affairs regulations governing disability compensation and pension. It is essential that *the entire record of examinations and the medical-industrial history be reviewed to ascertain whether the recent examination is full and complete,* including all special examinations indicated as a result of general examination and the entire case history.... Examinations less full and complete than those on which payments were authorized or continued will not be used as a basis of reduction. Ratings on account of diseases subject to temporary or episodic improvement, e.g., manic depressive or other psychotic reaction, epilepsy, psychoneurotic reaction, arteriosclerotic heart disease, bronchial[ ] asthma, gastric or duodenal ulcer, many skin diseases, etc., will not be reduced on any one examination, except in those instances where all the evidence of record clearly warrants the conclusion that sustained improvement has been demonstrated. Ratings on account of diseases which become comparatively symptom[-]free (findings absent) after prolonged rest ... will not be reduced on examinations reflecting the results of bed rest. Moreover, though material improvement in the physical or mental condition is clearly reflected[,] the rating agency will [consider] whether the evidence makes it reasonably certain that the improvement will be maintained under the ordinary conditions of life. (Emphasis added.)

At no time did the Board discuss the applicability of this regulatory provision. Nor did the Board discuss whether the recent examinations were as "full and complete" as the examination granting an increased rating.

 The Secretary argues that the rating board explicitly invoked the provisions of 38 C.F.R. § 3.105(e) (1992) in reducing the rating. Secretary's Br. at 12. However, compliance with one regulatory provision does not excuse noncompliance with another relevant regulatory provision; the Board is "required to apply *all* relevant statutes and regulations appropriate to the particular case before it." *Browder v. Derwinski*, 1 Vet.App. 204, 205 (1991) (emphasis added); *Dofflemyer v. Derwinski*, 2 Vet.App. 277, 280 (1992); *Akles v. Derwin-*

*ski,* 1 Vet.App. 118 (1991); *Payne v. Derwinski,* 1 Vet.App. 85 (1990); *Jolley v. Derwinski,* 1 Vet.App. 37 (1990); *see also Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). "The Court is compelled to 'hold unlawful and set aside' a rating action which resulted from the failure to follow applicable statutory or regulatory commands. Such an action is necessarily 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' and therefore void *ab initio.*" *Dofflemyer,* 2 Vet.App. at 281 (quoting 38 U.S.C.A. § 7261(a)(3) (West 1991)); *see also Schafrath v. Derwinski,* 1 Vet.App. 589, 595–96 (1991) ("When the issue raised is a rating reduction and the Court determines that the reduction was made without observance of law," the Court will reinstate the prior rating.) On remand, the Board must discuss the applicability of Sections 3.344(a), (b) (rating reduction procedure in cases where doubt remains), and (c) and provide adequate reasons or bases for its findings of fact.

■■■ Appellant also argues that VA used the wrong diagnostic code used in evaluating his conditions. Br. at 15–16. "A determination of whether the appropriate diagnostic code was selected is a question of law," which the Court reviews de novo. *McGrath v. Brown,* 5 Vet.App. 57, 59 (1993). The Court may set aside a conclusion of law that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 38 U.S.C.A. § 7261(a)(3)(A). We address the issue of the selection of a proper diagnostic code in the context of the appeal of the BVA's July 19, 1991, decision, not the earlier rating or BVA decisions.

While in service, the Physical Evaluation Board had rated appellant under DC 7599–8730 for "neuralgia of the left ilio-inguinal nerve secondary to repeated acute episodes [of] epididymitis with chronic pain and intermittent swelling." R. at 102. Neuralgia is "acute paroxysmal pain radiating along the course of one or more nerves usu[ally] without demonstrable changes in the nerve structure." WEBSTER's at 471. However, on March 12, 1984, the RO granted service connection for appellant's right epididymitis under "Scars, superficial, tender and painful on objective demonstration." 38 C.F.R. § 4.118, DC 7599–7804; *see also* 38 C.F.R. § 4.20 (providing for analogous ratings for unlisted conditions), 4.27 (providing for rating codes for unlisted conditions) (1992). On September 24, 1986, the RO decided that appellant's condition did not warrant a change in the 20% disability rating for the epididymitis. R. at 174. On October 8, 1986, appellant sent an NOD, styled as a "Notice of Appeal," regarding the rating for epididymitis and requesting that a rating be established for his right testicle condition. R. at 176. On October 14, 1987, he appealed to the BVA on the basis that he had been rated for a condition (neuralgia) that was not "close to" his epididymitis. R. at 198. On January 27, 1989, the BVA remanded the matter for further development as to the effect of appellant's service-connected disabilities on his industrial adaptability. R. at 216. The RO's August 1989 rating decision, reducing the disability rating for right epididymitis to 0%, continued to rate appellant under DC 7599–7804.

■■ It does not appear that the RO or the BVA subsequently adjudicated, or even considered, the issue of the selection of a proper DC. At no time has the Board provided reasons or bases for its selection of DC 7599–7804 as opposed to the diagnostic code used by the Army in its evaluation of appellant's condition. "The lack of reasons or bases for the Board's decision favoring one diagnostic code over others 'frustrates effective judicial review.'" *Lendenmann v. Principi,* 3 Vet.App. 345, 350 (1992) (*quoting Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *see Suttman v. Brown,* 5 Vet.App. 127, 134 (1993) (requirement that Board consider and discuss selection of diagnostic code is heightened where the disability has been rated as an unlisted condition by analogy to another condition); *see also Pernorio v. Derwinski,* 2 Vet.App. 625, 629 (1992) (remanding for Board to

provide reasons or bases for the various diagnostic codes used by VA throughout its adjudication process). On remand, the Board must discuss the August 1989 rating decision's consideration of appellant's condition under DC 7599–7804 and must address, supported by adequate reasons or bases, the issue of the selection of a diagnostic code in the August 1989 RO decision.

■■■ However, the Court lacks authority to review the March 1984 RO rating decision originally rating appellant's right epididymitis under DC 7599–7804 or the September 1986 RO decision with which he expressed disagreement concerning the diagnostic code. *See Russell v. Principi*, 3 Vet.App. 310, 315 (1992) (it would be inconsistent with Court's jurisdiction for it to conduct a 'full review' of previous decisions over which it does not have plenary jurisdiction). Appellant could not have filed an NOD that could have conferred jurisdiction upon the Court with respect to either the March 1984 or the September 1986 RO decision. *See* Veterans' Judicial Review Act, Pub.L. No. 100–687, § 402, 102 Stat. 4105, 4122 (1988) (found at 38 U.S.C.A. § 7251 note (West 1991)) (Court does not have jurisdiction unless an appellant has filed a valid NOD on or after November 18, 1988); 38 U.S.C.A. § 7105(b)(1) (West 1991) (NOD must be "filed within one year from the date of mailing of notice of the result of the initial review or determination"); 38 C.F.R. § 20.302 (1992); *Prenzler v. Derwinski*, 928 F.2d 392 (Fed.Cir.1991). Appellant's recourse is to seek reconsideration of those decisions on the basis of clear and unmistakable error.

■■■ Appellant also contends that the RO deprived him of procedural due process when it reduced the epididymitis rating without affording him an opportunity for a pre-reduction hearing. Br. at 16–19. However, appellant raises the "due process" argument for the first time here in this Court. A claimant seeking to appeal an issue to the Court must first obtain a *final* BVA decision on that issue. *See* 38 U.S.C.A. §§ 7266(a), 7252(a) (West 1991); *see also Rosalinas v. Brown*, 5 Vet.App. 1, 2 (1993) (claim of constitutional violation was not ripe for consideration by Court where BVA had not had the opportunity to express a view as to the constitutionality of 38 U.S.C.A. § 107(b) as applied to appellant); *Saunders v. Brown*, 4 Vet.App. 320, 326 (1993) (Court remanded constitutional claim where it was intertwined with factual questions that had not been developed for review). "Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b) (West 1991). In this case, the veteran has never before submitted the "due process" issue to the BVA. Thus, he has not exhausted his administrative remedies, and the Court will not preempt the BVA and address the merits of this claim. *See Herzog v. Derwinski*, 2 Vet.App. 502, 503 (1992); *Branham v. Derwinski*, 1 Vet. App. 93, 94 (1991); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990).

### C. *Individual Unemployability*

■■■ The Court lacks jurisdiction to consider appellant's IU claim. He submitted an IU claim in July 1985. R. at 151. On August 25, 1986, the Board denied a total disability rating for IU purposes. R. at 165. Appellant submitted a new IU claim on August 29, 1986. R. at 169. *See Suttman*, 5 Vet.App. at 137, (where a similar claim for a total disability rating for IU purposes has been previously and finally denied, a repeat claim for a total disability rating for IU purposes is a new claim). On October 7, 1987, the RO sent appellant a Statement of the Case (SOC) explaining that there was no new and material evidence concerning the IU claim. R. at 192. On October 14, 1987, appellant appealed to the BVA. R. at 194. On January 27, 1989, the BVA remanded the IU claim for further development. On June 19, 1990, the BVA remanded the IU claim again. R. at 296. On July 19, 1991, after the requested development had been completed, the Board denied a total disability rating for IU purposes. *Horowitz*, BVA 91–30011, at 9. It is this claim, submitted to the VA in August 1986, that is currently on appeal to the Court. Recently, the Court held in *Hamilton v. Brown*, 4 Vet.App. 528, 538 (1993) (consolidated with *Contreras v.*

*Brown,* and with *Powell v. Brown,* (en banc), that "where the BVA remands to an RO for further development and readjudication a claim previously decided by the RO and properly appealed to the BVA ..., an expression of disagreement with a subsequent RO readjudication on remand cannot be an NOD." In this case, appellant submitted an IU claim in August 1986, and the Board remanded the matter to the RO for further development and readjudication in January 1989 and in June 1990. Therefore, the proper reference point for determining if this Court has jurisdiction over the claim is October 14, 1987, when appellant filed an appeal to the BVA, expressing disagreement with an October 7, 1987, SOC denying his IU claim. This October 14, 1987, expression of disagreement does not confer jurisdiction upon this Court. *See* Veterans' Judicial Review Act, *supra;* 38 U.S.C.A. § 7105(b)(1); 38 C.F.R. § 20.302; *Prenzler, supra.* However, the Court's decision regarding the IU claim does not preclude appellant from filing a new IU claim with VA.

 Appellant also argues that the BVA's August 1986 decision denying a total rating for IU purposes should be reversed because of "clear error." Br. at 21. However, appellant raises the "clear and unmistakable error" argument for the first time here in this Court. A claimant seeking to appeal an issue to the Court must first obtain a *final* BVA decision on that issue. *See* 38 U.S.C.A. §§ 7266(a), 7252(a). "Review in the Court shall be on the record of proceedings before the Secretary and the Board." 38 U.S.C.A. § 7252(b). In this case, the veteran has apparently never before submitted the issue of "clear and unmistakable error" to the BVA. *See Russell, supra* ("clear and unmistakable error" issue must have been adjudicated by the BVA first before the Court may review the issue). Thus, he has not pursued this issue before the administrative agency, and the Court will not preempt the BVA and address the merits of this claim. *See Herzog, supra; Branham, supra; Mokal, supra.*

**CONCLUSION**

For the reasons stated above, the Court VACATES the July 19, 1991, decision of the BVA and REMANDS the case for readjudication consistent with this opinion.