**William W. McGRAW, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–27.

United States Court of Veterans Appeals.

Nov. 15, 1994.

Samuel M. Tumey, Liberty, MS, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Richard Mayerick, Washington, DC, were on the brief, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

HOLDAWAY, Judge:

The appellant, William W. McGraw, appeals an October 15, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which determined that new and material evidence had not been submitted to establish service connection for a neurological disorder, and denied service connection for arthritis. The Court affirms the decision of the BVA.

## I. BACKGROUND

The appellant served on active duty with the U.S. Army from May 1968 to February 1970. At his induction physical in April 1968, he gave a history of rheumatic fever, swollen or painful joints, and a fracture of the left ankle. During service the appellant was treated for a torn medial meniscus in the left knee and diffuse joint pain. During an examination of his joints in August 1968, the appellant reported he had multiple joint pain for over ten years. Upon examination, the physician found mild synovial thickening of the right wrist. The appellant also complained of lower back pain and left knee pain at his separation examination in January 1970. Multiple joint pains were again noted.

In October 1970, the appellant underwent a VA compensation and pension examination during which he complained of "sugar shakes," irregular heart beat, and left knee and ankle pain. The examination showed no limitation of motion of the cervical, dorsal, and lumbar spine; no joint enlargement, tenderness, ligament instability, limitation of motion, or pain reaction on motion of the hips, right knee, and ankle; mild synovial thickening and mild crepitation of the left knee, with a definite point tenderness over the anterior-medial joint space; no limitation of range motion, pain reaction, or muscle spasm in the shoulders, elbows, wrists, and finger joints; and minimal synovial thickening of both wrists. The appellant was diagnosed with chronic tenosynovitis of both wrists and degenerative medial meniscus. In April 1971, the regional office (RO) granted a 10% disability rating for degenerative medial meniscus of the left knee and a 0% rating for tenosynovitis of the right wrist. Tenosynovi-

tis of the left wrist was determined not to be service connected.

In 1985, the appellant submitted a claim for a nonspecific neurological disease, which VA apparently treated as a claim for an increased rating, and in November 1985 the appellant underwent another compensation and pension examination. The examination revealed snapping tendons with good function, subjective sensory change possibly related to insufficient circulation, and no objective evidence of left knee problems. In December 1985, the RO reduced the appellant's disability rating to 0% for his degenerative medial meniscus in the left knee. The appellant filed a Notice of Disagreement (NOD) in February 1986 and he appealed to the BVA. In April 1987, the Board denied an increased disability rating for degenerative medial meniscus of the left knee.

In October 1987, the appellant filed a claim through his service representative for service connection for multiple sclerosis and submitted results from nerve conduction studies, electromyography, and a nerve biopsy. Because there was no medical diagnosis of multiple sclerosis, the RO treated this as a claim for chronic neuropathy with axonal degeneration and fibrosis, and it denied service connection for paralysis of a nerve in November 1987. This decision was not appealed.

In February 1989, the appellant requested that VA "reopen" his claim, and he submitted medical records from the Mayo Clinic, which indicated that the appellant most likely suffered from atypical spinocerebellar degeneration. In March 1989, the RO issued a confirmed rating decision continuing the denial of service connection for neurologic pathology. An NOD was filed in April 1989. The appellant subsequently submitted medical records from Dr. Subramony and Dr. Currier, including Dr. Subramony's July 1989 letter stating that none of the symptoms the appellant listed could be attributed as early manifestation of neurological disease, but some symptoms, such as back pain, arthritis, and synovial thickening could be manifestations of an immune process. The appellant also submitted an August 1989 letter from his family physician, Dr. Lenoir, stating that the appellant had a progressive illness of

obscure etiology and that it was "highly probable that the symptoms which [the appellant] ... noted as far back as 1968 may have been early manifestations of his illness." The letter does not specifically identify what the "symptoms" were. The appellant furnished a chronology of his major symptoms beginning in 1968. In August 1989, the appellant testified before a hearing officer at the RO and raised the issue of entitlement to service connection for arthritis.

In September 1989, the appellant submitted a medical history from Dr. Lenoir, dating from 1957. These records indicated complaints of physical weakness, buzzing in the ears, and visual disturbances in April 1971, and continued symptomatology throughout the 1970's. The appellant also submitted medical records from Dr. Winn, who removed a cyst from the appellant's neck in 1970 and removed an enchondroma of the first finger of the right hand in 1974, and Dr. Gamble, who treated the appellant for leg numbness in 1984 and 1985. The appellant submitted a January 1990 letter from Dr. Collins, a rheumatologist, stating that the appellant might have Sjogren's syndrome, a condition associated with arthritis, and that a literature search did not find any connection between spinal cerebellar degeneration and any form of inflammatory arthritis. An April 1990 biopsy of the appellant's salivary gland tissue did not reveal any lymphocytes "absolutely specific for Sjogren's syndrome" but lymphocytes which were "consistent" with such a diagnosis. Dr. Subramony stated in a January 1990 letter that he did not find a direct relationship between the nerve dysfunction shown on the appellant's electromyographic examination and any arthritis the appellant might have. Dr. Windebank from the Mayo Clinic stated in a January 1990 letter that people with spinocerebellar degeneration "often experience joint soreness because their joints are not used or protected in the usual way."

In May 1991, the Board remanded the appellant's claim for neurologic and rheumatologic examinations. The June 1991 VA examination showed no abnormalities of the joints except as related to the appellant's recent right ankle injury. The rheumatolo-gist specifically discounted the diagnosis of Sjogren's syndrome and stated that he could "find no reason to suggest that any neurologic syndrome is related to [the appellant's] history of joint pain." The neurologist found that the appellant's "neurologic abnormalities suggest problems in the posterior columns and/or peripheral nerves of uncertain cause and no clearcut single diagnosis" and that further testing would not lead to a more definitive diagnosis. In August 1991, the RO continued the denial of service connection for a neurological condition and found that service connection for arthritis was not warranted.

In its October 15, 1992, decision, the BVA treated the raising of the neurological issue as an attempt to reopen, and after reviewing the extensive medical records, concluded that the evidence was not sufficiently probative to reopen the appellant's claim. The Board determined that there was no evidence of a neurological condition during service or within one year afterward. The Board also determined that arthritis was not service connected after reviewing the appellant's service medical records and records from the 1991 VA examinations.

## II. ANALYSIS

### A. Neurological Disorder

■ The appellant argues that the 1987 RO decision denying service connection for paralysis of a nerve was not final because this disorder was not the same as that in his claim for benefits. However, this argument is without merit. In 1987 the appellant submitted medical records which included results from nerve conduction studies, electromyography, and a nerve biopsy. These records do not contain any diagnosis of multiple sclerosis, the condition for which the appellant submitted his claim, but refer to chronic neuropathy with axonal degeneration and fibrosis, a general description of symptomatology. The appellant himself acknowledged in his October 1987 letter to his service representative that he did not have multiple sclerosis. The appellant did not have any outstanding claims at the time the RO denied service connection in November 1987 and notified the appellant of his appeal

rights. In other words, the RO's denial of service connection for paralysis of a nerve was part and parcel of the multiple sclerosis claim because the appellant's application and the RO's disposition involved the same condition. *See Ephraim v. Brown*, 5 Vet.App. 549, 550 (1993). Since the appellant did not appeal, the decision became final with respect to the appellant's claim for benefits due to a neurologic disorder. *See* 38 U.S.C. § 7105(b)(1), (c); 38 C.F.R. §§ 20.200, 20.302.

■ The November 1987 decision was final and could be reopened only upon the presentment of "new and material" evidence. *See* 38 U.S.C. §§ 5108, 7104(b). Whether evidence is "new and material" is a question of law which this Court reviews de novo. *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). " 'New' evidence is that which is not merely cumulative of other evidence of record." *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is relevant to and probative of the issue at hand, and of sufficient weight and significance that there is a reasonable possibility that the new evidence, when considered in light of all the evidence, would change the outcome. *Id.; see Colvin, supra.*

■ The newly submitted evidence consists of private medical records and/or correspondence from Dr. Lenoir, Dr. Winn, Dr. Gamble, Dr. Subramony, the Mayo Clinic, and Delta Medical Center; reports from the 1991 VA rheumatologic and neurologic examinations; and the appellant's testimony at his personal hearing. Although the Board found the newly submitted evidence not to be probative for reopening purposes and therefore purported not to reopen the claim, our de novo review convinces us that there was new and material evidence to warrant reopening under 38 U.S.C. § 5108. However, we also conclude that the BVA's decision to the contrary was harmless error because it did perform a de facto reopening and readjudication. *See Kightly v. Brown*, 6 Vet.App. 200, 206 (1994); *Guimond v. Brown*, 6 Vet.App. 69, 72 (1993). The Board thoroughly and carefully considered all the evidence, both new and old, and denied the appeal only after adjudi-

cating the effect of the new evidence on the old.

■ The only evidence which furnishes a possible service connection link is Dr. Lenoir's August 1989 statement that it was "highly probable that the symptoms which [the appellant] ... noted as far back as 1968 may have been early manifestations of his illness." The letter purports to link some of the appellant's symptoms of his current neurological disorder of an unknown etiology to on or about the period of time he was in the service. Although the Board did not specifically mention this letter in its findings, it did consider and refer to Dr. Lenoir's records and determined in light of *all* the medical evidence, none of which specifically linked the appellant's condition to service, that service connection was not warranted. For example, neurologist Subramony in his July 1989 letter, which the Board specifically referred to, concluded that "none of [the appellant's] symptoms [from service] ... can be attributed as early manifestation of neurological disease." Furthermore, Dr. Lenoir's letter does not state that 1968, the key year in this case, was necessarily when the unspecified symptoms started.

In fact, the medical evidence as well as the service medical records and other testimony indicate clearly that the "symptoms" referred to by Dr. Lenoir preexisted service and were no worse at the conclusion of the appellant's service than they were at the beginning. The 1968 service medical records indicate that the appellant had a history of multiple joint pain for ten years at the time of his induction. The appellant reported the same joint pain at his separation examination. Given all the other overwhelming medical evidence and the context of Dr. Lenoir's short, somewhat ambiguous letter, the Board's failure to refer specifically to the letter in arriving at its factual conclusion, was, at the most, harmless error. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991).

### B. Arthritis

■ In its October 15, 1992, decision, the Board also denied entitlement to service connection for arthritis. A determination of service connection is a finding of fact subject to the "clearly erroneous" standard of re-

view. *See Horowitz v. Brown*, 5 Vet.App. 217, 221 (1993). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, [the Court] cannot overturn them." *Id.* at 53.

As with the appellant's neurological disorder, a definitive diagnosis of arthritis seems elusive. According to Dr. Collins' April 1990 letter, the appellant's salivary gland biopsy did not "absolutely" reveal Sjogren's syndrome but the findings were "consistent." However, the VA rheumatologist in 1991 refuted Dr. Collins' conclusions and determined there was no evidence of Sjogren's syndrome. Moreover, the VA rheumatologist found no joint abnormalities except as related to the appellant's recent right ankle injury. He also concluded that the appellant's history of joint pain which, it must be remembered, preceded his service by some ten years, was not related to any neurologic syndrome. Thus, given the evidence of record, the factual findings of the Board are plausible.

### III. CONCLUSION

The October 15, 1992, decision of the Board is AFFIRMED.