Citation Nr: 1719233 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 12-05 180 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to service connection for obstructive sleep apnea. 


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


ATTORNEY FOR THE BOARD

A.Yaffe, Associate Counsel







INTRODUCTION

The Veteran served on active duty from January 1983 to June 1991, to include service in the Gulf War. 

This matter comes before the Board of Veterans' Appeals (Board) from a March 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia, which denied service connection for obstructive sleep apnea. 

In May 2014, the Board remanded the case to the Agency of Original Jurisdiction for additional development, to include retrieving additional medical records and affording the Veteran a VA compensation examination. The matter has been properly returned to the Board for further appellate consideration. 


FINDINGS OF FACT

1. The Veteran had symptoms of obstructive sleep apnea during active service.

2. The Veteran had symptoms of obstructive sleep apnea since service separation.


CONCLUSION OF LAW

Resolving all reasonable doubt in the Veteran's favor, the criteria for service connection for obstructive sleep apnea have been met. 38 U.S.C.A. §§ 1110, 1131, 5107(b) (West. 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).







REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The appeal of service connection for obstructive sleep apnea has been considered with respect to VA's duties to notify and assist. Given the favorable outcome adjudicated herein, i.e., a grant of service connection for obstructive sleep apnea, no conceivable prejudice to the Veteran could result from this decision and further explanation of how VA has fulfilled the duties to notify and assist is not necessary. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

Service Connection Claim - Laws and Regulations

Service connection may be granted for disability arising from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); see also Hickson v. West, 12 Vet. App. 247, 253 (1999), citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995). 

In this case, obstructive sleep apnea is not a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provisions based on "chronic" in-service symptoms and "continuous" post-service symptoms under 38 C.F.R. § 3.303(b) do not apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

In rendering a decision on appeal the Board must also analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 
10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through his senses. See Layno, 6 Vet. App. 465. Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007). Lay evidence may establish a diagnosis of a simple medical condition, a contemporaneous medical diagnosis, or symptoms that later support a diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). A veteran as a lay person is competent to offer an opinion on a simple medical condition. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (citing Jandreau at 1372).

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the Veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The United States Court of Appeals for Veterans Claims has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

A significant factor to be considered for any opinion is the accuracy of the factual predicate, regardless of whether the information supporting the opinion is obtained by review of medical records or lay reports of injury, symptoms and/or treatment, including by a veteran. See Harris v. West, 203 F.3d 1347, 1350-51 (Fed. Cir. 2000) (examiner's opinion based on accurate lay history deemed competent medical evidence in support of the claim); Kowalski v. Nicholson, 19 Vet. App. 171, 177 (2005) (holding that a medical opinion cannot be disregarded solely on the rationale that the medical opinion was based on history given by the veteran); Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (holding that the Board may reject a medical opinion based on an inaccurate factual basis).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Analysis

The Veteran asserts that the current obstructive sleep apnea began in service and the symptoms of obstructive sleep apnea worsened after returning from Iraq. 

After a review of all the evidence of record, lay and medical, the Board finds that the evidence of record demonstrates that the Veteran has a current diagnosis of obstructive sleep apnea. An August 2004 sleep study confirmed a diagnosis of moderate obstructive sleep apnea with a recommendation for a use of CPAP mask to assist the Veteran with breathing. 

A review of his service treatment records (STRs) indicates that in April he had complaints of headaches and sore throat. The medical professional stated that those were likely flu symptoms, but no official diagnosis was given. The same symptoms were noted again during service in March 1988 and July 1989, which again were attributed to flu like symptoms. 

Upon separation from service, the Veteran underwent a June 1991 examination and the report reflects that the Veteran made complaints of shortness of breath in June 1986. 

In August 1991, the Veteran underwent a VA general medical examination for compensation in which the examiner indicated that the Veteran was suffering from chest pain and shortness of breath that are likely related to a heart problem. However, an additional November 1991 VA examination for diseases of the heart that the cause for the Veteran's shortness of breath and chest pain is unknown since the examiner could not find any medical evidence to support a heart problem. 

An October 1996 correspondence from the Veteran reflects his report of having some of the same symptoms he had during service to include feeling exhausted most of the time. 

May 1996 medical treatment records from Savannah VA Outpatient Clinic (OPC) indicate a history of headaches, shortness of breath, and chest pains and July 1996 medical treatment records indicate that the Veteran "still has headaches."

In June 1998, the Veteran underwent a VA mental disorders examination for compensation. The examiner noted that the Veteran had a history of chronic headaches, dizziness, weakness, and shortness of breath. The examiner diagnosed the Veteran with "chronic intractable headaches." 

In June 1998, the Veteran underwent a VA feet examination for compensation. The examiner noted that the Veteran stated he continues to have headaches since 1991, feels fatigued, and stated: "I feel exhausted in spite of taking vitamin supplements."

In June 1998, the Veteran underwent a VA neurological disorders examination for compensation. The examiner noted that the Veteran reported having headaches and feeling light headedness since his return from the Gulf War in 1991. 

In September 1998, the Veteran underwent an additional VA general medical examination for compensation. The examiner noted that the Veteran was seen in the past and still reports a history of shortness of breath for at least four of five years on and off while not being a smoker or having any history of asthma with chest pain associated with the shortness of breath. It was also indicated that the Veteran experiences fatigue, weakness, and dizziness since his return from the Gulf War as well as regular headaches. 

In August 2002, the Veteran had a magnetic resonance (MRI) imaging of the brain which found no issues that cause his headaches or any other unexplained symptoms. 

February and March 2003 medical treatment records indicate that the Veteran still experiences shortness of breath and headaches. 

March 2004 service treatment records from Savannah OPC show an assessment for obstructive sleep apnea and fatigue due to obstructive sleep apnea. It is also indicated that the Veteran complained that he was snoring for months and feeling tired all the time. 

In August 2004, the Veteran underwent a sleep study in an outpatient clinic. The study indicates that the Veteran was diagnosed with obstructive sleep apnea and the study was requested in March 2004 to estimate the severity of it. As aforementioned, the study concluded that the Veteran had moderate obstructive sleep apnea with a recommendation for a use of CPAP mask to assist with breathing. 

December 2009 medical treatment records from Savannah OPC indicated that the Veteran's headaches may be related to his obstructive sleep apnea. 

In his March 2010 notice of disagreement (NOD), the Veteran stated that his obstructive sleep apnea symptoms were present since 1987 and got worse during Desert Storm in 1991. He further indicated that his headaches are due to his diagnosed obstructive sleep apnea. 

In an April 2010 statement in support of claim, the Veteran indicated that during his discharge physical he stated the symptoms he was feeling during his service in the first Gulf War which included fatigue, dizziness, shortness of breath, and headaches. 

In an October 2010 letter, the Veteran stated that during his service between 1987 and 1991 was when he started having symptoms of obstructive sleep apnea. He specifically indicated that he used to wake up with severe headaches on a daily basis despite taking pain killers the day before. 

In his February 2012 VA 9 Appeal form, the Veteran stated that according to his military service records all of the aforementioned complaints of symptoms such as sore throat, headaches, and shortness of breath were made early in the mornings immediately after he woke up from his sleep. 

In a May 2014 remand decision, the Board asked that attempt to furnish additional medical records will be made, specifically, a 2008 sleep study. The Board additionally notes that a 2004 sleep study is of record as discussed above. 

In compliance with the Board's remand decision, the Veteran underwent a VA compensation examination in July 2016 to determine the etiology of his obstructive sleep apnea. The examiner indicated that "according to the Mayo Clinic the symptoms of obstructive sleep apnea include: excessive daytime sleepiness; loud snoring; observed episodes of breathing cessation during sleep; abrupt awakenings accompanied by gasping or choking; awakening with a dry mouth or sore throat; morning headache; difficulty concentrating during the day; experiencing mood changes such as depression or irritability; high blood pressure; night-time sweating and decreased libido. The examiner then opined that the Veteran's symptoms of morning headaches, shortness of breath, and feeling exhausted in service did not continue after service and that the first time he complained again of experiencing these symptoms was in 2004. 

However, the Board notes the aforementioned evidence indicating that the Veteran reported feeling exhausted, having morning headaches, and shortness of breath as early as June and August 1991. Accordingly, to the extent that the July 2016 VA opinion misstates the Veteran's medical history, it is based upon an inaccurate factual premise and is of little to no probative value. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993). The VA opinion is therefore not only inadequate, but also assigned little or no probative weight. See Monzingo v. Shinseki, 26 Vet. App. 97, 107 (2012) ("even if a medical opinion is inadequate to decide a claim, it does not necessarily follow that the opinion is entitled to absolutely no probative weight.") 

Therefore, resolving any reasonable doubt in favor of the Veteran, the Board is granting the service connection claim based on evidence, including that pertinent to service, which establishes that the obstructive sleep apnea began in service and was so incurred in service. See 38 C.F.R. § 3.303(d). The finding that the Veteran has had obstructive sleep apnea symptoms to include morning headaches, feeling exhausted, and experiencing shortness of breath since service is supportive of the claim overall, because it tends to show that the same symptoms that began in service were the basis for the later diagnosed obstructive sleep apnea. See Horowitz v. Brown, 5 Vet. App. 217, 221-22 (1993) (lay statements are competent on in-service and post-service symptoms - dizziness, loss of balance, hearing trouble, stumble and fall, and tinnitus - that were later diagnosed as Meniere's disease). 

ORDER

Service connection for obstructive sleep apnea is granted. 



____________________________________________
S. B. MAYS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs