Citation Nr: 1132139 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 06-35 952 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Oakland, California


THE ISSUES

1. Entitlement to a disability rating in excess of 20 percent prior to July 14, 2008, (exclusive of the period dated from August 23, 2005, to September 31, 2005, during which time a temporary total evaluation was assigned pursuant to 38 C.F.R. § 4.30) for service-connected low back strain with degenerative disc disease (DDD), L5-S1.

2. Entitlement to a disability rating in excess of 40 percent since July 14, 2008, for service-connected low back strain with DDD, L5-S1.

3. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: California Department of Veterans Affairs




WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

M. Purdum, Associate Counsel


INTRODUCTION

The Veteran served on active duty from March 1974 to May 1978.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Oakland, California. A December 2004 rating decision denied the Veteran's claim of entitlement to an increased disability rating for his service-connected low back disability. By an October 2006 rating decision of a Decision Review Officer (DRO), the disability rating assigned to the Veteran's low back disability was increased to 20 percent, effective May 27, 2004; 100 percent, temporarily, for hospitalization, effective August 23, 2005; and 20 percent, effective October 1, 2005. By an April 2009 rating decision, the disability rating assigned was increased to 40 percent, effective July 14, 2008. By a June 2011 decision of the Appeals Management Center (AMC), a separate 40 percent disability rating for peripheral neuropathy, left lower extremity, was granted, effective September 15, 2010.

As the 20 and 40-percent evaluations are less than the maximum available ratings, the issue of entitlement to an increased disability rating for a service-connected low back disability, characterized to reflect such time periods on the title page of the decision herein, remains on appeal. See AB v. Brown, 6 Vet. App. 35, 38 (1993). As noted above, the Veteran's low back disability was granted a temporary 100 percent disability rating from August 23, 2005, to September 31, 2005, while he was hospitalized. As such, the maximum benefit allowable under the applicable regulations has been assigned for this period and, thus, no increased schedular ratings are available. 

In connection with this appeal, the Veteran testified at a personal hearing before the undersigned Veterans Law Judge sitting at the RO in October 2009; a transcript of that hearing is associated with the claims file.

The issue of entitlement to a TDIU, addressed in the REMAND portion of the decision below, is REMANDED to the RO via the AMC, in Washington, DC.


FINDINGS OF FACT

1. Prior to July 14, 2008, (exclusive of the period dated from August 23, 2005, to September 31, 2005, during which time a temporary total evaluation was assigned pursuant to 38 C.F.R. § 4.30), the Veteran's service-connected low back strain with DDD, L5-S1, was productive of forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees and pain or flare-ups contemplated by the rating criteria.

2. Since July 14, 2008, the Veteran's service-connected low back strain with DDD, L5-S1, was productive of forward flexion of the thoracolumbar spine 30 degrees or less and pain on forward flexion such that unfavorable ankylosis of the entire thoracolumbar spine was approximated.

3. Since January 18, 2006, the Veteran's service-connected low back strain with DDD, L5-S1, was productive of neurologic impairment of the left lower extremity that results in disability analogous to mild incomplete paralysis of the sciatic nerve.






CONCLUSIONS OF LAW

1. The criteria for a disability rating in excess of 20 percent for service-connected low back strain with DDD, L5-S1, were not met prior to July 14, 2008, (exclusive of the period dated from August 23, 2005, to September 31, 2005, during which time a temporary total evaluation was assigned pursuant to 38 C.F.R. § 4.30). 38 U.S.C.A. §§ 1155, 5103, 5103A (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 3.321(b)(1), 4.14, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237 (2010).

2. The criteria for a disability rating of 50 percent, but no higher, for service-connected low back strain with DDD, L5-S1, were met since July 14, 2008. 38 U.S.C.A. §§ 1155, 5103, 5103A (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.159, 3.321(b)(1), 4.14, 4.40, 4.45, 4.59, 4.71a, DC 5237 (2010); DeLuca v. Brown, 8 Vet. App. 202 (1995).

3. The criteria for a separate 10 percent disability rating, but no higher, for neurologic impairment of the left lower extremity have been met, effective January 18, 2006. 38 U.S.C.A. §§ 1155, 5103, 5103A (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.321, 4.2, 4.6, 4.7, 4.124a, 4.719, DC 8520 (2010).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156, 3.159, 3.326 (2010).

In correspondence dated in August 2004 and December 2008, the RO provided notice to the Veteran under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). Specifically, the RO notified the Veteran of information and evidence necessary to substantiate the present claim, to include descriptions of the information and evidence that VA would seek to provide, and that which the Veteran was expected to provide.

According to prior case law, adequate notice for an increased compensation claim also required, at a minimum, that VA notify a claimant that to substantiate his claim, the claimant must provide, or ask VA to obtain, medical or lay evidence demonstrating a worsening or increase in severity of the claimed condition, to include the effect that worsening has on his employability and daily life. Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008). Also, if the regulatory criteria under which the claimant was rated contained certain criteria such as a specific measurement or test result necessary to achieve a higher rating, VA was required to provide at least general notice of that requirement to the claimant. The claimant was also to be notified of the process by which a disability rating is determined. Vazquez, supra.

However, the U.S. Court of Appeals for the Federal Circuit recently vacated and remanded the Vazquez decision by the Court of Appeals for Veterans Claims. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). Specifically, the Federal Circuit held that only "generic notice" in response to the particular type of claim is required under 38 U.S.C.A. § 5103(a), rather than "veteran-specific" notice. Id. With respect to a claim for an increased rating, such notice does not need to inform the claimant of the need to submit evidence concerning the effect of a service-connected disability on his or her "daily life" because only the average loss of earning capacity, and not impact on daily life, is subject to compensation under 38 U.S.C. § 1155. Accordingly, the Federal Circuit vacated the earlier decision insofar as it requires VA to notify a veteran of alternative diagnostic codes or potential "daily life" evidence. Id.

In all, the Board finds that adequate notice was provided in relation to this Veteran's claim. Specifically, the December 2008 notification letter described the process by which disability ratings are assigned, and informed the Veteran of: (1) the criteria under which the disabilities on appeal are rated; (2) the need to submit evidence demonstrating the impact his disability has on his employment (and daily life); and (3) examples of the types of medical and lay evidence that are relevant to his claim for an increased rating. Accordingly, the Board finds that VA has satisfied its duty to notify in accordance with 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b)(1), as well as Vazquez-Flores v. Shinseki and related decisions.

VA has also done everything reasonably possible to assist the Veteran with respect to his claim for benefits in accordance with 38 U.S.C.A. § 5103A and 38 C.F.R. § 3.159(c). All identified and available post-service treatment records have been associated with the claims file, including those maintained by the Social Security Administration (SSA). The Veteran has been medically evaluated in conjunction with his claims on three occasions, and an addendum to the most recent examination was submitted. The resulting medical opinions are considered adequate for rating purposes as they are based on consideration of the Veteran's medical history and describe the relevant disability in sufficient detail to enable the Board to reach a fully informed decision. See Floyd v. Brown, 9 Vet. App. 88, 93 (1996); Ardison v. Brown, 6 Vet. App. 405, 407-08 (1994); Green v. Derwinski, 1 Vet. App. 121, 124 (1991). The duty to assist has been fulfilled.

Also, the Board finds there has been substantial compliance with its January 2010 remand directives. The Board notes that the U.S. Court of Appeals for Veterans Claims (Court) has recently held that "only substantial compliance with the terms of the Board's engagement letter would be required, not strict compliance." See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); see also Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that there was no Stegall (Stegall v. West, 11 Vet. App. 268) violation when the examiner made the ultimate determination required by the Board's remand.) The record indicates that the AMC sought updated VA treatment records, sought the Veteran's records maintained by the SSA, sought the Veteran's VA vocational rehabilitation file, and afforded the Veteran a sufficient VA examination. The AMC later issued a Supplemental Statement of the Case in April 2011 and issued an additional rating decision in June 2011. The Board thus finds that the AMC substantially complied with the mandates of its remand. See Stegall, supra, (finding that a remand by the Board confers on the appellant the right to compliance with its remand orders). Therefore, in light of the foregoing, the Board will proceed to review and decide the claims based on the evidence that is of record consistent with 38 C.F.R. § 3.655 (2010).

Increased Rating

Ratings for service-connected disabilities are determined by comparing a veteran's symptoms with criteria listed in VA's Schedule for Rating Disabilities, which is based, as far as practically can be determined, on average impairment in earning capacity. Separate diagnostic codes identify the various disabilities. 38 C.F.R. Part 4 (2010). When rating a service-connected disability, the entire history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40.

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. 38 C.F.R. § 4.14. The provisions of 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45, however, should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. Johnson v. Brown, 9 Vet. App. 7 (1996).

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.
With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. 38 C.F.R. § 4.45.

The Veteran's low back disability has been rated noncompensably disabling, effective July 2, 1982; 10 percent disabling, effective September 28, 2001; 20 percent disabling, effective May 27, 2004; temporarily totally disabling on the basis of hospitalization, effective August 23, 2005; 20 percent disabling, effective October 1, 2005; and 40 percent disabling, effective July 14, 2008. Effective September 15, 2010, a separate 40 percent disability rating for peripheral neuropathy, left lower extremity, was granted. 

The Veteran's low back disability is rated under DC 5237, contemplating lumbosacral or cervical strain. 38 C.F.R. § 4.71a, DC 5237.

DC 5237 is deemed by the Board to be the most appropriate rating criteria in this case, primarily because it pertains specifically to the disability at issue, lumbosacral, or low back, strain. The Veteran has not asked that an alternative diagnostic code be employed, and the Board can identify nothing in the evidence to suggest that another diagnostic code would be more appropriate.

It has not been contended or shown that the Veteran, during the appellate period, has demonstrated: residuals of a fracture or dislocation of the vertebra, contemplated by DC 5235; sacroiliac injury and weakness, contemplated by DC 5236; spinal stenosis, contemplated by DC 5238; spondylolisthesis or segmental instability, contemplated by DC 5239; ankylosing spondylitis, contemplated by DC 5240; or spinal fusion, contemplated by DC 5241. Thus, the diagnostic criteria contemplating such are not applicable. 38 C.F.R. § 4.71a, DCs 5235, 5236, 5238, 5239, 5240, 5241 (2010).

There is no evidence that the Veteran has been diagnosed with Intervertebral Disc Syndrome (IVDS), or has experienced incapacitating episodes, defined as requiring bed rest prescribed by a physician and treatment by a physician. Thus, the diagnostic criteria contemplating such, DC 5243, are not applicable. 38 C.F.R. § 4.71a, DC 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes (2010).

The Board notes that the Veteran has been diagnosed with DDD and that arthritis shown by X-ray studies is rated based on limitation of motion of the affected joint. When limitation of motion would be noncompensable under a limitation-of-motion code, but there is at least some limitation of motion, a 10 percent rating may be assigned for each major joint so affected. 38 C.F.R. § 4.71a, DCs 5003, 5010 (2010). For traumatic arthritis, DC 5010 directs that the evaluation of arthritis be conducted under DC 5003, which states that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, DC 5010. 

When, however, the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5010. In the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joints or two or more minor joint groups will warrant a rating of 10 percent; in the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations will warrant a 20 percent rating. However, in the present case, the Veteran's limitation of motion is compensable and further consideration of DCs 5003 and 5010 is not required.

Under the current regulations, all disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by the residuals of injury or disease.

Under the General Rating Formula for Diseases and Injuries of the Spine, a 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees, or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees, or the combined range of motion of the thoracolumbar spine not greater than 120 degrees, or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for unfavorable ankylosis of the entire cervical spine, or forward flexion of the thoracolumbar spine 30 degrees of or less, or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine, and a total rating is warranted for unfavorable ankylosis of the entire spine. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

The Board notes here that a 30 percent disability rating contemplated by the General Rating Formula for Diseases and Injuries of the Spine requires forward flexion of the cervical spine 15 degrees or less, or favorable ankylosis of the entire cervical spine. As the Veteran's low back disability is the disability currently service-connected, and there is no medical evidence demonstrating inquiry as to the Veteran's cervical spine intertwined with that of his low back disability, the 30 percent rating contemplated by the relevant criteria does not apply in the present case. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine, Note 2.

The current rating criteria provide for separate ratings for neurologic and orthopedic manifestations of a spine disability. See Note (1) of the General Rating Formula of Diseases and Injuries of the Spine. 

Ratings for paralysis of the sciatic nerve are set forth at 38 C.F.R. § 4.124A, DC 8520. A 10 percent disability rating is assigned for mild incomplete paralysis of the sciatic nerve. A 20 percent disability rating is assigned for moderate incomplete paralysis of the sciatic nerve. A 40 percent disability rating is assigned for moderately severe incomplete paralysis. A 60 percent disability rating is assigned for severe incomplete paralysis, with marked muscular atrophy. An 80 percent disability rating is assigned for complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. See 38 C.F.R. § 4.124a, DC 8520. DC 8620 refers to neuritis of the sciatic nerve, and DC 8720 refers to neuralgia of the sciatic nerve.

The term "incomplete paralysis," with this and other peripheral nerve injuries, indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. The ratings for the peripheral nerves are for unilateral involvement; when bilateral, combine with application of the bilateral factor. 38 C.F.R. § 4.124a.

Prior to July 14, 2008

Private treatment records dated in May 2004 indicate that the Veteran complained of constant back pain that felt like a "hot poker" in his low back. He reported that the pain occasionally shot down the back of both legs. The private physician noted that the Veteran had occasional paresthesias in the back of both legs. Physical examination revealed that the Veteran walked with his trunk flexed, and that he was able to bend over with his fingers outstretched, lacking about 8 inches to the floor. Median nerve compression test was negative and straight leg raising was negative. He was able to maintain Romberg position, and he could not exactly duplicate tandem gait, but had no gross truncal ataxia. Electromyography (EMG) at that time revealed normal lower extremities. 

Private treatment records dated in June 2004 indicate that the Veteran continued to complain of low back pain. The private physician reported that EMG did not reveal any denervation. 

VA treatment records dated in July 2004 indicates that the Veteran presented with increased lower back and leg pain that had become more frequent in the recent months. The Veteran reported that work, two months prior, with heavy construction equipment, caused severe mechanical stress that exacerbated his back symptoms. He rated his back pain as a 6-7 on a ten-point pain scale and described such as a dull ache with movement, spasms and a sharp burning pain down his left posterior thigh, calf, and inner arch of the foot. He reported associated increased bladder and bowel urgency, without incontinence. 

On VA examination in August 2004, the Veteran complained of chronic bothersome pain. He reported that such pain radiated into the buttock and thigh, bilaterally, without numbness of the feet or lower legs. The examiner noted that the Veteran's ability to drive was limited to about one hour due to pain and that walking on level ground for 30 minutes was possible. The Veteran reported that flare-ups of back pain occurred mostly with standing and driving, and resting for one hour provided some improvement. 

Physical examination in August 2004 revealed that the Veteran presented with average muscle condition, very good spinal alignment, and very good cooperation. He had some limping with the left leg which he attributed to back pain. He was able to rise on his toes and heels and flex forward and reach to the feet. His legs were equal in length, and percussion of the flexed spine was not painful. Range of motion included flexion to 95 degrees; extension to 20 degrees; and rotation and lateral bending to 30 degrees, bilaterally, with some mild pain with range of motion movements. Mild tenderness was noted at the L5. Reflexes were normal at the knees and ankles, and extensor muscles and sensation were normal at the lower legs and feet. Calf circumference was equal, and straight leg raising was easily tolerated to 80 degrees, bilaterally. The examiner opined that the decreasing flexion of the back by 30 degrees would represent the Veteran's subjective symptoms, and 25 degrees decreasing flexion would represent the Veteran's flare-ups. 

VA treatment records dated in March 2005 indicate that the Veteran complained of worsening low back pain and radicular pain down both of the legs into the calf. Recent MRI and EMG studies were reviewed. L5-S1 fusion surgery was recommended. 

VA treatment records dated in August 2005 indicate that the Veteran complained of chronic low back pain with left lower extremity radicular pain and occasional tingles. He reported that he thought his weakness was more due to deconditioning as he had not been very active since a recent back pain flare. The Veteran reported that he was able to walk as far as he wanted to, as long as he walked slowly. He reported that he was only limited by fatigue which had improved over the past months, and flare-ups of back pain. 

VA treatment records dated in August 2005 indicate that the Veteran underwent a well-tolerated, uncomplicated L5-S1 posterolateral fusion. 

VA treatment records dated on January 18, 2006 indicate that the Veteran reported that since his surgery, he experienced numbness in his left toe, left shoulder pain, and increasing numbness of the left hand. Muscle strength testing was unremarkable. The Veteran demonstrated decreased sensation to light touch, vibration, and temperature over the surface of the left foot. Reflexes were absent at the ankles, and toes were down-going, bilaterally. Nerve conduction studies (NCS) revealed, in pertinent part, mild loss of sensory axons in the left superficial peroneal nerve. 

VA treatment records dated in March 2006 indicate that the Veteran was wearing a lumbar support brace, post-surgery, and reported that his left toe numbness was getting better. 

VA treatment records dated in May 2006 indicate that the Veteran presented, subsequent to 10 sessions of physical therapy, with significantly improved back, hip, and leg pain, and improved ambulation.

VA treatment records dated in March 2007 indicate that the Veteran complained only of pain in the lower left extremity. He reported that pain shot down the left leg, laterally, to the top of the great toe. He reported that he could stimulate tingling in the L5 dermatome by touching the lateral thigh. He reported that sitting was painful and that walking was unlimited. Physical examination revealed that the Veteran was able to walk on his toes and heels, and that he had full and equal strength throughout. He presented with areflexic deep tendon reflexes, intact sensation, negative straight leg raising, and silent-toes Babinski. He was diagnosed with continued left lower extremity radiculopathy. 

Prior to July 14, 2008, as discussed above, the Veteran demonstrated forward flexion to 95 degrees on VA examination in August 2004. The Board notes here that while range of motion was measured during private treatment in May 2004, such motion is not recorded in a manner that the Board is able to interpret. Specifically, the private treatment provider reported that the Veteran was able to bend over with fingers outstretched and come 8 inches from the floor. It is not clear to the Board what degree of forward flexion the Veteran demonstrated. The Veteran does not demonstrate forward flexion of the thoracolumbar spine 30 degrees of less, or favorable ankylosis of the entire thoracolumbar spine, as is required for a 40 percent rating. Further, there is no evidence of unfavorable ankylosis of the entire thoracolumbar spine or unfavorable ankylosis of the entire spine, as is required for 50 percent and total ratings, respectively. Thus, DC 5237, rated under the General Rating Formula for Diseases and Injuries of the Spine, may not serve as a basis for a disability rating in excess of 20 prior to July 14, 2008. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

The Board is required to consider the effect of pain and weakness when rating a service-connected disability on the basis of limitation of motion. There is no indication that pain, due to disability of the lumbar spine, caused functional loss greater than that contemplated by the 20 percent evaluation. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). Rather, even with pain, and considering subjective complaints and flare-ups, the examiner, on VA examination in August 2004, opined that the Veteran would be able to forward flex to 65 or 70 degrees, respectively. Forward flexion to such extent does not warrant the next higher applicable disability rating, 40 percent, under DC 5237. The provisions of the general rating schedule for spinal disorders are controlling whether or not there are symptoms of pain, and irrespective whether the pain radiates. Thus, the Board finds that the currently assigned 20 percent disability rating already contemplates any pain on limitation of motion and does not warrant an additional rating under DeLuca prior to July 14, 2008.

The Board has considered whether a separate rating for neurologic and orthopedic manifestations of the Veteran's low back disability is warranted. See Note (1) of the General Rating Formula of Diseases and Injuries of the Spine. 

The record reveals that in May 2004, as discussed above, the Veteran complained of occasional paresthesias in the back of both legs, however, EMG revealed normal extremities. NCS conducted during VA treament on January 18, 2006, revealed mild loss of sensory axons in the left superficial peroneal nerve. There is no evidence of diagnosed neurological abnormalities prior to July 14, 2008, as to the Veteran's left or right lower extremity, or any other extremity. 

The Board finds that the competent evidence of record warrants a separate 10 percent rating for the neurologic manifestation of left lower extremity radiculopathy, as analogous to neuritis of the sciatic nerve of mild degree. See 38 C.F.R. § 4.124a, DC 8620. There is no evidence of greater impairment. Specifically, the Veteran has only reported radiating pain, numbness, and tingling, or symptoms that are "wholly sensory", as contemplated by the regulatory criteria for a 10 percent disability rating for mild incomplete paralysis. He has not described any functional limitations related to the lower extremities and thus a disability rating in excess of 10 percent is not warranted. 

The Board does not find that there are any other separately diagnosed neurologic abnormalities, including bowel or bladder impairment, shown to be caused by or part of his low back disability prior to July 14, 2008. While the Veteran complained of increased bladder and bowel urgency on one instance of treatment in July 2004, he denied incontinence and significantly, there is no evidence that his complaint of urgency was followed by the diagnosis of a neurological abnormality.

Since July 14, 2008

On VA examination in July 2008 the Veteran reported that present orthopedic treatment included careful activity, oral medication, and exercising and bracing. He reported that he was not using a cane. He reported that his comfort level allowed for driving for about one hour, limited by back pain, and walking, on flat terrain, was limited to 20 minutes by tiredness. He complained of back pain over the entire thoracic and lumbar spine, worst at the low back, radiating into the left buttock and left thigh. He complained of some pain in the lower legs, without numbness, and some numbness in the left foot. He reported that he felt worse than he did before the August 2005 VA surgical procedure. 

Physical examination in July 2008 revealed that the Veteran was trim and healthy in appearance, with average muscle condition, very good spinal alignment, and very good cooperation. The Veteran was limping with the back and the left lower extremity. He was able to rise on his heels and toes, and could flex forward and reach his thigh. Percussion of the flexed spine was painful, with tenderness, from L2-L5. The right lower extremity was mildly shorter than the left, by one-half of one inch. There was mild pelvic tilt while standing. Range of motion testing revealed flexion to 10 degrees; extension to 5 degrees; rotation to the right to 5 degrees and to the left 10 degrees; and lateral bending to 5 degrees, bilaterally, with pain over the entire range of motion. There was muscle spasm in the back. Reflexes were absent at the knees and ankles. Extensor muscles were very good at the lower legs and feet, and sensation was decreased at the left big toe. Calf circumference was equal, and straight leg raising was limited to 45 degrees on the left. Dorsiflexion of the foot did not worsen pain. The examiner reported that decreasing flexion of the back by 10 degrees represented the Veteran's various symptoms, and decreasing lateral bending by 5 degrees, bilaterally, represented the Veteran's very bothersome symptoms. Repetitive movement did not cause flare-ups or loss of motion. The examiner noted that prolonged bedrest was being used, and that the Veteran went to bed for a day or two with flare-ups of back pain, monthly, however, the bed rest episodes were self-prescribed. The Veteran was diagnosed with post-surgical syndrome, involving chronic muscular strain super-imposed on degenerative instability of joints adjacent to the arthrodesis, as well as bothersome scarring. The examiner reported that the lumbar nerve roots probably had some minor irritation, without definite findings. 

On VA examination in September 2010, the Veteran reported that present orthopedic treatment included careful activity, oral medication, and exercising and bracing. He reported that he was not using a cane or crutch. He reported that his comfort level allowed for driving for about one hour, limited by back pain, and walking limited to 15-20 minutes. The Veteran complained of pain over the entire back, worst at the low back, and some pain in the left hip and left thigh, with some numbness in the left foot. He complained of pain, weakness, and easy fatigue, especially at the low back and left lower extremity. He reported that he noticed impaired coordination at the left lower extremity, including the foot. He complained of flare-ups with activity, and that such was improved by resting for one hour. 

Physical examination in September 2010 revealed that the Veteran presented with normal weight, average muscle condition, and very good spinal alignment and cooperation. Percussion of the flexed spine was painful at L5. The left leg had mild shortness of one-half of one inch. Range of motion testing revealed flexion to 10 degrees; extension to 5 degrees; rotation to 8 degrees, bilaterally; and lateral bending to 5 degrees, bilaterally, with pain over the entire range of motion. There was muscle spasm, and tenderness over the entire lumbar spine at the left buttock. Reflexes were absent at the knees and ankles. Extensor muscles were satisfactory and sensation was decreased at the left lower extremity and left big toe. Calf circumference was 3/8 of one inch smaller on the left than on the right. Straight leg raising was tolerated to 45 degrees on the right and 40 degrees on the left. Dorsiflexion of the foot did not worsen pain. The examiner reported that decreasing flexion of the back by 8 degrees represented the Veteran's various symptoms. Repetitive movement did not cause flare-ups or loss of motion. The examiner noted that prolonged bedrest was being used, and that the Veteran went to bed for a day or two with flare-ups of back pain, monthly, however, the bed rest episodes were self-prescribed. The Veteran was diagnosed with post-arthrodesis syndrome, involving chronic muscular strain super-imposed on degenerative instability of joints adjacent to the arthrodesis, as well as bothersome post-operative scarring. The examiner reported that the lumbar nerve roots had some continuing impairment on the left, including numbness and atrophy. 

Addendum to the September 2010 VA examination report, dated in May 2011, indicates that the examiner commented upon the Veteran left lower extremity neuropathy, including lumbar nerve root impairment, due to low back strain with degenerative disc disease and surgical procedure for the same. He reported that the severity of the Veteran's nerve impairment was moderately severe. The examiner noted moderate muscular atrophy and moderate sensory changes. He reported that such symptoms were not back enough to be considered severe nerve impairment and too severe to be considered moderately or mild impairment. 

Since July 14, 2008, as discussed above, the Veteran has demonstrated forward flexion to 10 degrees on VA examinations in July 2008 and September 2010. There is no clinical evidence of unfavorable ankylosis of the entire thoracolumbar spine or unfavorable ankylosis of the entire spine, as is required for 50 percent and total ratings, respectively. Thus, DC 5237, rated under the General Rating Formula for Diseases and Injuries of the Spine, may not serve as a basis for a disability rating in excess of 40 percent since July 14, 2008. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

The Board notes here that while on VA examinations in July 2008 and September 2010, the Veteran reported self-prescribed bed rest for his low back disability. As a disability rating under the criteria contemplating IVDS requires incapacitating episodes, defined as requiring bed rest prescribed by a physician and treatment by a physician, and there is no evidence that the Veteran has been prescribed bed rest, the diagnostic criteria contemplating such, DC 5243, are not applicable. 38 C.F.R. § 4.71a, DC 5243, Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes.

The Board is required to consider the effect of pain and weakness when rating a service-connected disability on the basis of limitation of motion. As to the period since July 14, 2008, there is evidence that pain, due to disability of the lumbar spine, caused functional loss greater than that contemplated by the 40 percent evaluation. 38 C.F.R. §§ 4.40, 4.45; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Considering subjective complaints and flare-ups, the examiner, on VA examination in July 2008, opined that the Veteran's 10 degrees of forward flexion would be limited by 10 degrees. On VA examination in September 2010, the examiner opined that the Veteran's 10 degrees of forward flexion would be limited by 8 degrees. While the provisions of the general rating schedule for spinal disorders are controlling whether or not there are symptoms of pain, and irrespective whether the pain radiates, there is evidence that considering the Veteran's subjective complaints and flare-ups, he is able to demonstrate only either 2 or 0 degrees of forward flexion. Thus, the currently assigned 40 percent disability rating does not contemplate such pain on limitation of motion and the next higher disability rating under DC 5237 is warranted under DeLuca since July 14, 2008. Specifically, the Board will resolve reasonable doubt in the Veteran's favor and conclude that the forward flexion limited to 2 or 0 degrees more closely approximates unfavorable ankylosis of the thoracolumbar spine, as is required for a disability rating of 50 percent under DC 5237. There is no evidence that there is unfavorable ankylosis of the entire spine, as is required for a total rating. 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine.

The Board has considered whether a separate rating for neurologic and orthopedic manifestations of the Veteran's low back disability is warranted since July 14, 2008. See Note (1) of the General Rating Formula of Diseases and Injuries of the Spine. 

As discussed above, the Board determined herein that the Veteran is entitled to a separate disability rating of 10 percent for neurologic impairment of the left lower extremity have been met, effective January 18, 2006, the date upon which NCS revealed mild loss of sensory axons in the left superficial peroneal nerve. The AMC, by a June 2011 rating decision, granted a separate 40 percent disability rating for peripheral neuropathy, left lower extremity, effective, September 15, 2010, the date of the September 2010 VA examination, to which a May 2011 addendum was submitted, revealed moderately severe symptoms. The Board finds no evidence of such symptoms prior to September 15, 2010, and no neurological abnormalities were found since July 14, 2008, as to the Veteran's right lower extremity, or any other extremity. 

The Board does not find that there are any other separately diagnosed neurologic abnormalities, including bowel or bladder impairment, shown to be caused by or part of the service-connected low back disability since July 18, 2008.

Conclusion

The Board has considered whether a higher disability rating might be warranted for any period of time during the pendency of this appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). The weight of the probative evidence of record demonstrates that at no time prior to July 14, 2008, was a disability rating in excess of 20 percent warranted for the Veteran's service-connected low back disability. However, the weight of the probative evidence demonstrates that since July 14, 2008, a disability rating of 50 percent, but no more, is warranted. Finally, the weight of the probative evidence demonstrates that as of January 18, 2006, a separate 10 percent disability rating for neurological impairment of the left lower extremity is warranted. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Veteran. App. 49 (1990).

In reaching the above decision, the potential application of various provisions of Title 38 of the Code of Federal Regulations have been considered, whether or not they were raised by the appellant, as required by the holding of the Court in Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991), including the provisions regarding extraschedular ratings. In the present case, there is not a symptom or sign of the Veteran's low back disability not contemplated by the diagnostic criteria. Thus, the Board finds that the evidence of record does not present "an exceptional or unusual disability picture so as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b)(1); see also Thun v. Peake, 22 Vet. App. 111, 115-16 (2008) (referral for extraschedular rating warranted only where level of disability is not contemplated by rating schedule and disability picture exhibits other related factors showing unusual or exceptional disability picture).


ORDER

A disability rating in excess of 20 percent prior to July 14, 2008, (exclusive of the period dated from August 23, 2005, to September 31, 2005, during which time a temporary total evaluation was assigned pursuant to 38 C.F.R. § 4.30) for service-connected low back strain with DDD, L5-S1, is denied.

A disability rating of 50 percent, but no more, since July 14, 2008, for service-connected low back strain with DDD, L5-S1, is granted, subject to the laws and regulations governing monetary awards.

A separate 10 percent disability rating, but no more, for the neurologic impairment of the left lower extremity, is granted, effective January 18, 2006, subject to the laws and regulations governing monetary awards.


REMAND

Although the Board regrets the additional delay, further development is needed prior to disposition of the raised claim of entitlement to a TDIU.

VA will grant TDIU when the evidence shows that a veteran is precluded, by reason of his service-connected disabilities, from obtaining and maintaining any form of gainful employment consistent with his education and occupational experience. 38 C.F.R. §§ 3.340, 3.341, 4.16 (2010). Under the applicable regulations, benefits based on individual unemployability are granted only when it is established that the service-connected disabilities are so severe, standing alone, as to prevent the retaining of gainful employment.

In this case, at the present time, the Veteran has been service-connected for a number of disabilities. Entitlement to a TDIU requires that, if there are two or more disabilities, at least one disability is rated 40 percent or more and there is sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a) (2010).

As the Veteran's service-connected low back strain with DDD, L5-S1, was rated 40 percent disabling, and his combined evaluation for compensation was 80 percent, as of the most recent rating decision of record, dated in June 2011, he meets the percentage requirements of 38 C.F.R. § 4.16(a). As the Veteran met the percentage requirements of 38 C.F.R. § 4.16(a) prior to the Board's decision herein, further consideration of his combined rating percentage subsequent to the Board's decision is not required. The question, therefore, becomes whether the evidence shows that the Veteran is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of his service-connected disabilities.

As noted in the Board's January 2010 remand, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a TDIU claim is part of an increased rating claim when such claim is raised by the record. The Court further held that when evidence of unemployability is submitted at the same time that a veteran is appealing the initial rating assigned for a disability, the claim for TDIU will be considered part and parcel of the claim for benefits for the underlying disability. Id. In the instant case, the Veteran is currently unemployed. Additionally, at his Board hearing, he testified that he had been adjudicated as disabled by SSA due, in part, to his back disability. An August 2007 VA vocational rehabilitation determination reflects that that the Veteran had not worked in over three years since he was medically retired due to his back condition, that he was in receipt of disability benefits from the SSA, and that he was not a realistic candidate for vocational rehabilitation and employment. Moreover, the July 2008 VA examiner stated that the Veteran's working capacity is severely diminished by his chronic back difficulty. 

The Board sought additional medical evidence as to whether the Veteran was unemployable due to his service-connected disabilities, jointly or singly. On VA examination in September 2010, the examiner opined that the Veteran's working capacity was severely limited by his back problems. The examiner reported that the Veteran was limited to very light work and that considering his age and various medical problems; he was permanently and totally disabled. 

In the present appeal, there is not a sufficient opinion of record as to whether the Veteran is unable to secure or follow a substantially gainful occupation, solely due to his service-connected disabilities. It is significant that the VA vocational rehabilitation decision considered the Veteran's disability determination from the SSA which includes a non service-connected disability. Further, the examiner, in September 2010, considered the Veteran's age and various medical problems. 

Because it is unclear to the Board whether the Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, the prudent and thorough course of action is to afford the Veteran a VA examination, to include a VA Social and Industrial Survey.

Therefore, the Board determines that a contemporaneous and complete medical opinion is necessary to adjudicate this claim, and is required by VA's duty to assist the Veteran. See 38 U.S.C.A. § 5103A (West 2002); see also Colayong v. West, 12 Vet. App. 524, 538-40 (1999).

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran VCAA-compliant notice under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) as to his claim of entitlement to a TDIU.

2. Contact the Veteran and provide him an additional opportunity to provide information as to his last employers. Any responses, including negative responses, from the Veteran or from any contacted employer must be associated with the claims file.

3. After the above-described development has been completed, schedule the Veteran for a VA examination, to include a VA Social and Industrial Survey, to ascertain the impact of his service-connected disabilities on his unemployability. In this regard, the examiner should note that the Veteran is currently service-connected for the following disabilities: (1) low back strain with DDD, L5-S1; (2) peripheral neuropathy, left lower extremity, associated with low back strain with DDD, L5-S1; (3) carpal tunnel syndrome, left wrist; (4) carpal tunnel syndrome, right wrist; and (5) scar, status-post arthrodesis at L5-S1, associated with low back strain with DDD, L5-S1.

The examiner must evaluate and discuss the effect of all of the Veteran's service-connected disabilities, both singly and jointly, on his employability. The examiner should opine as to whether the Veteran's service-connected disabilities, without consideration of his age or non-service-connected disabilities, render him unable to secure or follow a substantially gainful occupation.

The claims file, to include a copy of this Remand, should be made available to the examiner for review in conjunction with the opinion or examination, and the examiner should note such review. A complete rationale should be provided for all opinions given. The opinions should be based on examination findings, historical records, and medical principles. The examiner should fully articulate a sound reasoning for all conclusions made.

The claims file must be properly documented regarding any notifications to the Veteran as to any scheduled examination.

4. Subsequent to the VA examination, review the examination report to ensure complete compliance with the directives of this remand. If it is deficient in any manner, corrective procedures must be implemented.

5. Then, after ensuring that any other necessary development has been completed; readjudicate the Veteran's claim of entitlement to a TDIU, considering any additional evidence added to the record. If the action remains adverse to the Veteran, provide the Veteran and his representative with a Supplemental Statement of the Case and allow the Veteran an appropriate opportunity to respond thereto. Thereafter, return the case to the Board.

The Board intimates no opinion as to the outcome of this case. The appellant need take no action until so informed. The purpose of this REMAND is to ensure compliance with due process considerations.

The purpose of the examination requested in this remand is to obtain information or evidence (or both) which may be dispositive of the appeal. Therefore, the Veteran is hereby placed on notice that pursuant to 38 C.F.R. § 3.655 (2010) failure to cooperate by not attending the requested VA examination may result in an adverse determination. See Connolly v. Derwinski, 1 Vet. App. 566, 569 (1991).

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).



______________________________________________
C. TRUEBA
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs